JORDAN T. SMITH (Nevada Bar No. 12097)
jts@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, NV 89101
Tel: 702.214.2100 / Fax: 702.214.2101

MATTHEW A. GOLDSTEIN (Admitted Pro Hac Vice)
mgoldstein@farhangmedcoff.com
ROBERT A. BERNHEIM (Admitted Pro Hac Vice)
rbernheim@farhangmedcoff.com
FARHANG & MEDCOFF PLLC
4801 E. Broadway Boulevard, Suite 311
Tucson, AZ 85711
Tel: 520.214.2000 / Fax: 520.214.2001

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT D. THORNE, JR.; BARBARA J. DENYSSCHEN; DAVE SHEER GUNS; DIPLOPOINT; SOUTHERN ARMS; PRETORIA ARMS PTY LTD; and G AND D GROUP,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF STATE; MICHAEL R. POMPEO, in his official capacity as Secretary of U.S. Department of State; DIRECTORATE OF DEFENSE TRADE CONTROLS, Bureau of Political Military Affairs, U.S. Department of State; MIKE MILLER, in his official capacity as Acting Deputy Assistant Secretary for Defense Trade Controls, Bureau of Political Military Affairs, U.S. Department of State,<br><br>Defendants. | Case No. 2:19-cv-01982-JCM-EJY<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

/ / /

## I.     **<u>INTRODUCTION</u>**

"This action does not challenge any DDTC discretion whether to grant a particular license or other approval." Complaint, ECF No. 1 ("Compl.") ¶ 2.  It does not request the Court to overrule a license denial or require the Defendants to approve any export. *Id.; see also* [Proposed] Order, ECF No. 2-3.  Nor do Plaintiffs ask the Court to order the Government to refrain from classifying Plaintiffs as "unreliable recipients." *Id.*

This action seeks to enjoin the Government from taking actions with the combined effect of debarment—a penalty—without notice, a hearing, and other due process required by law.  Requiring the Government to comply with applicable ITAR procedures would give both Plaintiffs and the Government a fair chance to present their positions to an administrative law judge for resolution. There is nothing "unprecedented" about this request for relief.

This challenge to the Government's imposing a penalty without due process is distinct from a challenge to a "judgment made on a case-by-case basis in the context of a specific export license application." Government's Response, ECF No. 20 ("Resp."), 6.  This is not just Plaintiffs' interpretation of the law.  ITAR Part 127, titled "VIOLATIONS AND PENALTIES", and the Government's own website confirm that DDTC considers "legal exclusion from transactions subject to the ITAR" to constitute "debarment" (Exhibit 1) and debarment is listed as one of the "penalties" subject to Part 128 procedural requirements.

The Government asserts that "the only actions carried out by the Department with respect to Plaintiffs are the denials of specific export applications." Resp. 9.  This is simply untrue.

DDTC brands the Dave Sheer entities as "unreliable recipient[s] of U.S.-origin defense articles"; expressly imposes a "presumption of denial" against all licenses involving the Dave Sheer entities; commands third parties that the Dave Sheer entities may not be involved in ITAR-controlled transactions; implies to third parties that the Dave Sheer entities violated the AECA and/or ITAR; commands third parties to notify others of DDTC's blacklisting of the Dave Sheer entities; mandates that end users provide written acknowledgement that defense articles cannot be transferred to the Dave Sheer entities; and has evidently taken other actions to carry out

debarment (collectively, "the DDTC actions"). For example, the Declaration of Catherine Hamilton, DDTC's Director of Licensing, indicates that the Dave Sheer entities are designated on an internal agency blacklist [1] (Declaration of Catherine E. Hamilton, ECF No. 20-1, ¶¶ 16-18) and that DDTC is including express restrictions on conduct with Dave Sheer in all licenses involving exports of firearms for commercial resale in South Africa. *Id.* at ¶ 46.

The DDTC actions go well beyond the mere "denial of specific export applications," and the Government admits that DDTC takes its actions to ensure firearms "do not flow through Gareth Denysschen," (Resp. 1) and to prevent "resale or transfer of arms" to the Dave Sheer entities by third parties. Resp. 11, n.6.

Ignoring the actual scope of the DDTC actions at issue, ignoring procedural requirements required before taking such actions, and ignoring the clear language of Plaintiffs' request for relief, the Government doubles down, further implies that Plaintiffs are involved in unlawful activities, and bets all on a mischaracterization of Plaintiffs' claims.

## II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.  Judicial Review is Proper.

The Administrative Procedure Act embodies a "basic presumption of judicial review." *Abbott Laboratories v. Gardner*, 387 U. S. 136, 140 (1967). Exemptions from APA requirements are "narrowly construed and only reluctantly countenanced." *San Diego Air Sports Ctr., Inc. v. F.A.A.*, 887 F.2d 966, 969 (9th Cir. 1989).

#### 1.  The DDTC Action is not Committed to Agency Discretion.

The APA § 701(a)(2) exception for actions committed to agency discretion is narrow and only applies in rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 410

---

[1] This list results in repeated republication of the disparaging designation because DDTC's determination that the Dave Sheer entities are "unreliable recipients" is evidently being communicated throughout the federal government any time a person submits a license to export commercial firearms to South Africa. "In effect, [Plaintiffs have] been stigmatized throughout the entire federal government." *Larry v. Lawler*, 605 F.2d 954, 958 (7th Cir. 1978). This government stigmatization is in sharp contrast to the credible business practices and reputation of the Dave Sheer entities and the Denysschens. *See* G. Denysschen Affidavit, Exhibit 2 ¶ 4 and 5; Exhibit 3.

(1971) (internal quotation omitted); *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003). "The default rule is that agency actions are reviewable… even if no statute specifically authorizes judicial review." *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004).

To be sure, the AECA confers broad authority on the Secretary. But the AECA does not leave his discretion unbounded to issue penalties without following procedures expressly required by the AECA and ITAR. Rather, the AECA and ITAR strictly limit the Government's enforcement tools, prescribing detailed procedures and standards for debarment. 22 U.S.C. §§ 2778(e); 22 C.F.R. parts 127 and 128. These statutes and regulations provide "meaningful standards for defining the limits of [the Government's] discretion, there is 'law to apply' under § 701(a)(2), and courts may require that the agency follow that law." *Heckler v. Chaney*, 470 U.S. 821, 835 (1985) (internal quotations omitted).

Furthermore, debarment is not an area traditionally committed to agency discretion and courts entertain constitutional and statutory challenges to agency designations that prohibit exports by or to a particular party. *See, e.g.*, *In Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2011); *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 613 F.3d 220 (D.C. Cir. 2010); *Dart v. United States*, 848 F.2d 217 (D.C. Cir. 1988).

### 2. The Military and Foreign Affairs Exceptions do not Apply.

The APA § 553(a)(1) military and foreign affairs exception does not apply for several reasons. First, the challenged action is outside the exception's scope, which only applies where subject matter is "directly involved" in a foreign affairs function. *Indep. Guard Ass'n of Nev. v. O'Leary*, 57 F.3d 766, 769-770 (9th Cir. 1995); S.Doc. No. 248, 79th Cong., 2d Sess. 199 (1946) ("the exceptions apply only 'to the extent' that the excepted subjects are directly involved.").

Plaintiffs are not challenging any action directly involved in a military or foreign affairs function. They do not challenge a decision involving consular venues, appointment of ambassadors, trade agreements, trade embargoes, recognition of a foreign sovereigns, or military affairs—challenges found by other courts to be directly related to military or foreign affairs.

Nor do Plaintiffs challenge activities at issue in the cases cited by the Government (Resp.

at 8-9), which involve challenges to agency actions that clearly and directly involve a foreign affairs function. *See Cornejo-Barreto v. Siefert*, 379 F.3d 1075 (9th Cir. 2004) (agency decision to honor extradition request from the Mexican government); *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Maritime Admin.,* 215 F.3d 37 (D.C. Cir. 2000) (agency decision to approve transfers of vessel registries from the United States to the Marshall Islands); *B-West Imports v. United States*, 75 F.3d 633 (Fed. Cir. 1996) (arms embargo against China).

Instead, Plaintiffs challenge DDTC's failure to follow the requisite process—a Government action that is not committed to agency discretion. For example, in *Washington v. United States Department of State*, the Western District of Washington recently held that the State Department violated the APA when it issued a temporary list modification and a letter authorizing publication of certain files. *Washington v. U.S. Dep't of State, et al.*, No. C18-1115RSL, 2019 WL 5892505, at *1 (W.D. Wash. Nov. 12, 2019). In determining that Government's actions were reviewable, the court held: "whether the agency complied with clear procedural requirements and considered factors Congress deemed relevant when removing an item from the USML is neither a political question nor one committed to the agency's discretion as a matter of statute or case law." *Id.* at *5; *see also Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247 (W.D. Wash. 2018).

In contrast to the cases cited by the Government, DDTC's failure to follow AECA and ITAR procedural requirements is not an action clearly and directly involved in a foreign affairs function. This is true even where the DDTC action pertains to export laws because "[t]he foreign affairs exception cannot apply to functions merely because they have impact beyond the borders of the United States." *Mast Indus., Inc. v. Regan*, 596 F. Supp. 1567, 1581 (Ct. Int'l Trade 1984).

Resolution of whether the Government has imposed a debarment and complied with its own regulations before doing so does not directly involve foreign affairs. Rather, it involves internal affairs of the State Department, and presents "purely legal question[s] of statutory interpretation". *Japan Whaling Ass'n v. Am. Cetacean Soc.,* 478 U.S. 221, 230 (1986).

For this same reason, the Government's citations to the vacated district court decision in *U.S. Ordnance v. Dep't of State*, 432 F. Supp. 2d 94, 97 (D.D.C. 2006), is inapposite. In that case,

DDTC issued charging letters to U.S. Ordnance and followed the Part 128 process. *Id.* U.S. Ordnance then filed an action seeking review *only* of the Government's "denial of plaintiff''s license applications," and the court refused to "conflat[e] license denial decisions with a debarment determination." *Id.* at 99. In the instant case, Plaintiffs do not challenge any individual licensing decision, but instead challenge the failure to provide Part 128 protections for DDTC actions that go well beyond individual licensing decisions. Similarly, the Government's citations to *United States v. Hudak*, No. CR-02-1574, 2003 WL 27384932, at *2 (D.N.M. 2003), is misplaced because *Hudak* involved a license decision and a decision to list an item on the ITAR.

The Government claims "administration of the AECA is a foreign affairs function" subject to the APA exception. Resp. 7 (citing 22 C.F.R. § 128.1). But applying the exception to all DDTC actions would swallow the rule and take the exception beyond its scope, even though the ITAR implicates foreign affairs. *See Yassini v. Crosland,* 618 F.2d 1356, 1360 n.4 (9th Cir. 1980) (foreign affairs exception "would become distended if applied to INS actions generally, even though immigration matters typically implicate foreign affairs"); *see also Baker*, 369 U.S. at 211 ("it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance"); *Mast Indus.*, 596 F. Supp. at 1581.

### B.     The Debarment is a Final Agency Action.

The Government's contentions that the debarment has not occurred and is not a final agency action (Resp. 9-10) are untenable, inconsistent with the DDTC actions, and not determinative. "A plaintiff can plead a claim for de facto debarment if [the] plaintiff has effectively been debarred from doing business with the government without the benefit of procedural protections." *Hestia Educ. Grp., LLC v. King*, No. 15-CV-01463-DMR, 2016 WL 362226, at *6 (N.D. Cal. Jan. 29, 2016) (citation omitted); *see also Nat'l Career Coll., Inc. v. Spellings*, No. CV 07-00075 HG-LEK, 2007 WL 9362682, at *4 (D. Haw. Aug. 3, 2007) ("the concept of de facto debarment is not limited to the procurement contract context.").

To constitute a final action, an action must "mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined

or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted). Regardless of an agency's characterization, courts "focus on the practical and legal effects of the agency action" and interpret finality in a "pragmatic and flexible manner." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).

Over fourteen months ago, after years of approving export licenses to the companies, the Government changed the legal status of the Dave Sheer entities from eligible to ineligible, inverting the legal presumption under which DDTC operates. The DDTC actions in support of the de facto debarment show that the debarment has determined rights with legal consequences. It is therefore final and reviewable.

The fact that Defendants' presumption of denial and other actions against the Dave Sheer entities and Denysschen may not be classified by DDTC as "debarment" only underscores the Government's due process violation. Here, the Government also attempts to retract DDTC's September 2018 email from Catherine Hamilton to Thorne that advised: "persons are accorded an opportunity to present additional information requesting reconsideration of an adverse decision; **however** we have determined that new permits would not overcome **the presumption of denial** for these transactions." Appendix, ECF No. 2-4 ("App.") 98 (emphasis added).

DDTC's use of the term "presumption of denial" was no accident. The term is defined at ITAR § 127.11, which states that "presumption of denial" means what it says—a presumption of denial for licenses or other approvals of exports involving a person who was convicted of violating certain U.S. criminal statutes or who are ineligible to receive any export licenses from any agency of the U.S. Government. 22 C.F.R. § 127.11(a).

Hamilton's email clearly advised there was a "presumption of denial" and that new permits would not overcome the presumption.[2] Her internal thoughts on whether debarment has

---

[2] Even if the license reconsideration process applied (it does not), Hamilton does not explain why she did not timely correct Plaintiffs' misunderstanding that reconsideration was unavailable when she first learned of the alleged misunderstanding. *See* Hamilton Affidavit ¶ 55. In any event, Plaintiffs were not required to pursue this administrative remedy because "[i]t is axiomatic that one need not exhaust administrative remedies that would be futile or impossible to exhaust." *Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004); *see also Taniguchi v. Schultz,* 303 F.3d 950, 957 (9th Cir. 2002) (plaintiffs need not exhaust administrative remedies when doing so would be futile).

occurred are also irrelevant because they lay in sharp contrast to actual DDTC's actions in this case. They are also contradicted by the Government's position in its Response that states its purpose is to ensure that firearms "do not flow through Gareth Denysschen." Resp. 1.

While the Government tries to assure the Court that it will review any future license applications from Thorne to export to the Dave Sheer entities (Resp. 10), nowhere does the Government state that the Dave Sheer entities or Denysschen can be engaged in ITAR-controlled transactions of any kind. After denying a dozen of Thorne's last licenses, DDTC's invitation to engage in further futile submissions does not moot its actions and, to the extent DDTC now attempts to withdraw the debarment, its actions fall squarely within the exception to mootness for actions that are capable of repetition, yet evading review.

### C. **Plaintiffs Are Likely to Prevail on Their Arbitrary and Capricious Claim.**

In response to an APA challenge, agencies must provide "the essential facts upon which the administrative decision was based." *Kitchens v. Dep't of Treasury*, 535 F.2d 1197, 1200 (9th Cir. 1976). The reviewing court's "inquiry into the facts is to be searching and careful." *Overton Park*, 401 U.S. at 416. Otherwise, judicial review is meaningless, for an agency can always defend an irrational decision by stating that it "determined" the decision was justified.

The only reason for debarment, now offered by the Government for the first time in its Response, is "information suggesting" there was "at least one instance in which arms from the Dave Sheer entities have been diverted outside South Africa to an unauthorized end user." Resp. 4.[3] The Government does not provide any details of the alleged diversion. Instead, it references Blue Lantern checks and types of information sources upon which it generally relies. Resp. 11.

Plaintiffs have copies of emails responding to a State Department request for a Blue Lantern visit in May 2018. *See* T. Harms Affidavit, Exhibit 4 ¶ 2-6. The emails show that

---

[3] The Government also argues: "Plaintiffs have not identified any 'relevant' evidence that the Department 'failed to consider.'" Resp. 12. This argument is illogical and disingenuous because the Government prevented Plaintiffs from presenting any evidence by (1) not providing notice of and any details on the alleged diversion now disclosed for the first time in the Government's Response; and (2) never provided Plaintiffs with any opportunity to present evidence. *See* n.2, *supra*, discussing DDTC's statement that reconsideration not available.

Southern Arms immediately responded to the State Department request: "We will accommodate everything you need and will have everything ready for you" and scheduled several on-site visits with the State Department. *Id.* But the State Department repeatedly cancelled the visits and then failed to respond to Southern Arms' offers to reschedule. *Id.* The State Department never completed the Blue Lantern check.

Blue Lantern standards require the Government to "confirm receipt and disposition of exported articles," a task regularly performed by a "site visit" and "[i]nterview of the foreign consignee or end-user." Exhibit 5. Such an investigation reasonably requires an interview of the named end user, which was never performed in this case. The fact that DDTC also failed to follow its own procedures in performing the alleged Blue Lantern check further increases the likelihood that Plaintiffs will prevail on the merits of their APA claims. Plaintiffs are certain that, had DDTC actually completed the Blue Lantern check and/or provided requisite due process, Plaintiffs could have refuted any reasonable DDTC suspicions underlying debarment.

### D. **Plaintiffs Are Likely to Prevail on their Ultra Vires Claim.**

The Government's argument against ultra vires action points to general statutory provisions that guide individual licensing decisions and policy. Resp. 12. These provisions do not authorize the DDTC actions at issue, and the Government ignores AECA § 2778(e)'s requirement that the Government follow procedures "prescribed in regulations issued under the [AECA]" in imposing penalties. These procedures are at ITAR § 127.7 and Part 128.

### E. **Plaintiffs Are Likely to Prevail on their Due Process Claims.**

The Government contends that the Plaintiffs have not established the "plus" element of stigmatization because the debarment does change any status, because "[e]nd users do not have any 'right' to purchase arms", and because "[a]n end-user also has no 'right' to procedural protections before the Department determines he is an 'unreliable recipient' of U.S. origin arms." (Resp. 21). But "ineligible" is a legal status recognized by law under ITAR § 120.1(c)(2). AECA § 2778(e), ITAR § 127.7, and ITAR Part 128 require that DDTC provide procedural protections before it imposes penalties that would, by operation of law, change a person's status from eligible

to "ineligible" under § 120.1(c)(2).

The Government's argument is also mistaken because no underlying constitutional right need be alleged for the plus prong. Instead, under the plus prong, a plaintiff can show s/he has suffered a change of legal status if s/he "legally could not do something that she could otherwise do." *Miller v. California*, 355 F.3d 1172, 1179 (9th Cir. 2004). For instance, in *Ulrich,* the case cited by the Government, the court found the "plus" factor satisfied when an employer refused to rehire an individual, even when the individual had no enforceable legal right to reinstatement. *Ulrich v. City of San Francisco*, 308 F.3d 968, 982-83 (9th Cir. 2002); *see also Wisconsin v. Constantineau,* 400 U.S. 433, 435 (1971) (violation where stigma resulted in inability to purchase alcohol). Even if a property interest is required, the change in legal status has negatively impacted Plaintiffs' goodwill, which is protected. *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1316 (9th Cir. 1989) ("The goodwill of one's business is a property interest entitled to protection.").

The Government also continues to distort Plaintiffs' constitutional claims. Plaintiffs' have not alleged a right to a license, to conduct foreign commerce or to purchase firearms. Rather, they claim a cognizable liberty interest—"a right to be free from stigmatizing governmental defamation having an immediate and tangible effect on [their] ability to do business." *Old Dominion Dairy Prods., Inc. v. Sec'y of Defense*, 631 F.2d 953, 961 (D.C. Cir. 1980); *see also Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (Fifth Amendment protects "right of the individual to contract [and] to engage in any of the common occupations of life.").

### F. Thorne is Likely to Prevail on his Fifth Amendment Takings Claim.

The Government argues that there was no taking of property because Thorne cannot have a property interest in foreign commerce. Resp. 14. But Thorne does not assert a property interest in foreign commerce. Nor is he asserting a property interest in any licenses obtained before debarment. Thorne instead asserts his right to procedural due process before the Government may make any determination that effectively will end his business, or else a means to be fairly compensated for the regulatory taking. *See, e.g., NEC Corp. v. United States*, 151 F.3d 1361, 1370 (Fed. Cir. 1998) ("an importer may be entitled to procedural due process regarding the

resolution of disputed facts involved in a case of foreign commerce when the importer faces a deprivation of "life, liberty, or property" by the Federal Government.").

### G. Plaintiffs Have Standing to Assert Their Claims.

Courts need not consider the standing of all plaintiffs as long as one plaintiff has standing. *See, e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986). Typical cases following this rule are those wherein plaintiffs challenge statutes, regulations, or other government policies as unlawful. *Nat'l Ass'n of Optometrists & Opticians v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) ("As a general rule, in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing.").

Barbara Denysschen clearly has standing as a United States citizen to challenge a debarment that applies to her as much as to the Dave Sheer entities. In contesting standing for Denysschen, the Government's Response ignores ITAR § 127.9, which extends debarment to any person related to a debarred entity by ownership, control, or position of responsibility. Here, Ms. Denysschen asserts claims in her own name for the debarment, which is imputed to her by law because of her ownership, control, and position of responsibility for the Dave Sheer entities. *See* B. Denysschen Affidavit, ECF. No. 2-2, ¶ 7. Additional information on how Ms. Denysschen and her two children, one of which is also a United States citizen, own the Dave Sheer entities is provided in the Supplemental Affidavit of B. Denysschen, Exhibit 6, ¶ 5.

The Government also argues that allowing standing for the Dave Sheer entities implicates "practical concerns" identified by *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). Resp. 19. But the Ninth Circuit recognized, "[t]he concerns in *Verdugo-Urquidez* were also specific to warrants and overseas operations." *Rodriguez v. Swartz*, 899 F.3d 719, 731 (9th Cir. 2018). Requiring DDTC to comply with established AECA and ITAR procedures does not implicate "a sea of uncertainty" on how constitutional protections apply to overseas operations or any of the other concerns of *Verdugo-Urquidez*.

The Government further claims *Rodriguez v. Swartz*, 899 F.3d 719 (9th Cir. 2018), and *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168 (S.D. Cal. 2019), which recognized the right

of non-citizens to raise constitutional claims, are limited to government actions at the border. But neither decision states such limitation. Rather, *Swartz* emphasizes, "We have a compelling interest in regulating our own government agents' conduct on our own soil." 899 F. 3d at 747.

The Government also argues the Dave Sheer entities' lack a significant voluntary connection to the United States (Resp. 16-20). But it ignores and fails to address the multiple DSP-83 End User Statements under which the Dave Sheer entities voluntarily subjected themselves to United States law. App. 149-161. It also ignores that the Dave Sheer entities are majority-owned by United States citizens (Exhibit 6), the regular travel to the United States by employees (App. 162-189), and the rental of United States property. App. 162-174.

The Government also summarily dismisses the significance of the Dave Sheer entities' continuing property interest in over $130,000 in inventory inside the United States that the companies have paid for—title to which would transfer to the Dave Sheer entities were it not for the Government's debarment. App. 145-148. The Dave Sheer entities cannot return or resell this inventory without suffering a significant loss. Exhibit 2 ¶ 8.

### III. PLAINTIFFS HAVE SHOWN IRREPARABLE HARM

Plaintiffs are likely to succeed on their claims, and any finding that a constitutional right "is either threatened or in fact being impaired… mandates a finding of irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

In addition, the Government concedes that the threat of being driven out of business can establish irreparable harm[4] (Resp. 22 (citing *Am. Passage Media Corp. v. Cass Comm's Inc*., 750 F.2d 1470, 1474 (9th Cir. 1985))) and courts in the Ninth Circuit recognize that a taking can establish irreparable harm for a preliminary injunction. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1139 (S.D. Cal. 2017), *aff'd*, 742 F. App'x 218 (9th Cir. 2018).

The Government cites *Goldies Bookstores, Inc. v. Superior Court*, 739 F.2d 466 (9th Cir. 1984), for the proposition that temporary financial injury alone does not constitute irreparable

---

[4] The Government also argues there is no evidence that Thorne could not find another foreign end user for his exports. But Thorne's business is based on his relationship with his daughter and he does not have any leads, connections or other means that would realistically allow him to develop new overseas customers. *See* R. Thorne Supplemental Affidavit, Exhibit 7, ¶ 7.

harm. But the court in *Goldies Bookstores* differentiated between financial injury, which "would be easily calculable and compensable in damages," from losses of goodwill and customers, which are harder to remedy with an award of damages. *Id.* at 471–72. The Dave Sheer entities have lost goodwill, customers, and suppliers as a result of the debarment, as evidenced by the 12 denied licenses, multiple order cancellations, and letters from suppliers stating that they can no longer supply the Dave Sheer entities. App. 116-118. This ongoing harm is not easily calculable or compensable. It is irreparable harm that will continue absent injunctive relief.

## IV. THE EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFFS

It is always in the public interest to prevent the violation of constitutional rights. Moreover, a preliminary injunction will not "undercut world peace" or impose any parade of horribles. The Government may continue to review and deny licenses on a case-by-case basis, investigate allegations, pursue enforcement proceedings with cause, and impose penalties, even against Plaintiffs. However, it must do so in compliance with existing AECA and ITAR procedural requirements. Such an injunction is within "the public interest [which] favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011).

## V. CONCLUSION

For the reasons stated in Plaintiffs' Motion for Preliminary Injunction and the above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction.

DATED this 13th day of December 2019.

FARHANG & MEDCOFF

By: */s/ Matthew A. Goldstein*
    Matthew A. Goldstein
    Robert A. Bernheim

PISANELLI BICE PLLC
Jordan T. Smith

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2019, I electronically filed and served the foregoing brief with the Clerk of the Court for the United States District Court for the District of Nevada using the CM/ECF system.

*/s/ Matthew A. Goldstein*
Attorney for Plaintiffs

- 14 -